## MEILINK STEEL SAFE CO. v. VAUGHN.

No. 9658.

Circuit Court of Appeals, Sixth Circuit.

March 20, 1944.

George F. Medill, of Toledo, Ohio (Marshall, Melhorn, Wall & Bloch and George F. Medill, all of Toledo, Ohio, on the brief), for appellant.

Ralph W. Cole, of Detroit, Mich. (Ralph W. Cole, of Detroit, Mich., and P. R. Taylor, of Toledo, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Appeal from a judgment in favor of appellee in the sum of $3913.40. The case was tried by the Judge without a jury.

Appellant, an Ohio corporation having its principal place of business at Toledo, manufactured steel safes, burglar-proof chests, vault doors and other steel safety equipment. Appellee was its employee. The gravamen of his suit is that appellant breached two contracts, one between appellant and appellee individually, and the other between appellant and appellee as assignee of Carl F. Johnson, by refusing to pay him commissions upon orders which he secured for appellant's products. Appellant's con-

tention is that these contracts called for commissions only upon orders completed by delivery of the goods and that because Governmental regulations prohibited filling of the orders it was not liable for such commissions. Decision depends upon construction of the contracts, and since they are similar in substance, it will be sufficient to consider the one between appellant and appellee.

The contract styled a "working agreement" was entered into February 1, 1940, between appellant and appellee, and the latter is referred to therein as the "Factory Representative." It could be cancelled by mutual consent or upon written notice by either party. It contains the following provision as to appellee's duties, to wit:

"Duties:

"The Factory Representative's principal duties are *the development of our wholesale dealer organization in the territory assigned, and such other duties as may from time to time be assigned.* The Factory Representative shall regularly call on the established dealers and render such assistance and help necessary in the sale of our equipment. In cities or trading areas where the Company is not adequately represented, *new accounts shall be opened and developed.* The Factory Representative shall furnish the Home Office with detailed reports covering each day's activities." (Italics ours.)

The contract specifically sets forth the territory assigned to appellee by appellant.

As to appellee's compensation it provides:

"Compensation.

"*Commissions for salesmen will be paid on all business developed in their territory assigned for regular contracts* * * *

"On all wholesale business obtained at the standard wholesale selling price, the Company agrees to pay the following commission:

"7½% on Burglar-Proof Chests and Vault Doors

"10% on Insulated Card Drawers, Val-U-Vaults, Security Chests. Visible File Safes, all Hercules Safes, and B Label Safes, #17, 20, 25, 30 and 35.

"12½% on all B Label safes #233 to 448, Inclusive.

"15% on all A Label safes." (Italics ours.)

Under the heading, "Payment of Commissions," it is provided:

"The Factory Representative shall receive copies of all orders received from their territory and copies of all invoices when shipment is made. Commission checks will be computed and payment made as promptly as possible after the first of each month covering commissions earned and due for the previous month."

It is stipulated that the amount of the judgment is correct if decision goes in favor of appellee, and that appellant was prevented and prohibited by Governmental war regulations from filling the orders on which appellee claims commissions.

■ It is our duty to determine what was meant by the underscored phrases, to wit, "Commissions for salesmen will be paid on all business developed" and "on all wholesale business obtained." When these provisions are read, in connection with the specific duties of appellee, it seems clear enough that he was under no obligation to appellant other than to procure orders for it. In our view this is a reasonable interpretation of the contract and has the decided merit of requiring appellant to pay for services rendered. We find no indication that appellee had any function to perform with reference to the delivery or non-delivery of the orders secured by him and accepted by appellant without question.

■ It is argued that there was a practical construction of the contract by the parties themselves contrary to our conclusion and that this is binding. This argument is based upon the following stipulation, to wit:

"6. Plaintiff's employment by defendant began in 1935 and ended March 31, 1942. Carl F. Johnson's employment began March 1, 1940, and ended March 31, 1942. During the terms of employment of both the plaintiff and Carl F. Johnson,—they were paid commissions monthly and the amount of such monthly payments was based by defendant upon the defendant's records of orders shipped and invoiced during the preceding month."

The stipulation leaves too much in doubt. The commissions were paid monthly and this practice was consistent with the contract. We must of course accept as true that these monthly payments were based by appellant upon its records of orders shipped during the preceding month but the mode of payment followed falls far short of es-

tablishing an agreement that covered all amounts earned. The question was never raised until appellant was prohibited from shipping the orders.

Having reached the conclusion that appellee's right to payment depends solely upon procuring the orders, we need not consider the effect of Governmental war regulations prohibiting shipment and delivery. We find nothing in our conclusion inconsistent with ·Ohio law.

Judgment affirmed.